No. 41.—ABNER P. POWERS and another, plaintiffs in error, *vs.* SCOTT CRAY, Receiver of the Ocmulgee Bank, defendant.

[1.] Bill for an account by client against attorney, should be dismissed on demurrer, if an account can be fairly taken in a Court of Common Law, and suitable relief had; there being no discovery sought or required, or allegation in the bill to show the peculiar remedial process or functions of a Court of Equity to be necessary.

Powers and another *vs.* Cray.

[2.] To confer Equity jurisdiction in this State, the bill in every case should show a Common Law remedy to be inadequate.   *Quere?*

In Equity, in Bibb Superior Court.   Tried before Judge FLOYD, January Term, 1849.

Scott Cray, as Receiver of the Ocmulgee Bank, filed his bill against Abner Powers and James Gates, returnable to November Term, 1844, of Bibb Superior Court.

The bill charges, that as attorney for the bank, Powers assumed the control of two *fi. fas.* in favor of the bank against Charles Collins, as maker, and Jewett & Burch, indorsers; that Powers claimed to be due him from the bank, commissions upon a large amount of money, sued into judgment for the bank, and that he caused the two *fi. fas.* mentioned, to be levied by James Gates, Sheriff of Bibb County, upon certain real estate in the City of Macon, for the purpose of paying himself the said commissions.

The bill farther charges, that the two *fi. fas.* had been paid off and discharged by Collins, the maker.

The bill prays that the defendant may account to the plaintiff for all moneys collected by him as attorney for the bank, and that he may be required to prove the lien which he claims to hold upon the two *fi. fas.* mentioned against Collins. The bill also prays for an injunction to restrain the collection of the said *fi. fas.* by Powers, the defendant.

Powers and Gates answered the bill, and at Chambers, on the 25th June, 1844, Judge *Tracy*, then the presiding Judge of the Flint Circuit, dissolved the injunction, on the ground that the defendant had sworn off the equity of complainant's bill, and ordered the *fi. fas.* to proceed.

The bill was not dismissed, but was continued in Court for several years, when the complainant filed an amendment to his bill.

The amended bill charges, that the defendant, Powers, as the collecting attorney of the bank, in the year 184—, received notes for collection from the bank, amounting to $172,552 26, and for which said notes the defendant has rendered no account.

The amended bill farther charges, that the defendant, Powers, has long since collected the sum of $4,028, by virtue of an execution in favor of the bank against one Dougherty and others, and of which he has made no account; that the defendant was

indebted to the bank in the sum of $178, being the amount overpaid him by the bank for damages and expenses on a protested check; that the defendant had collected from Hardy Dunham $144 37 on his note.

The amended bill farther charges, that a house and lot in the City of Macon had been sold under a *fi. fa.* in favor of the bank against Jewett & Burch, and bid off by the defendant, Powers, for the sum of $4,000, and that the Sheriff had not yet executed titles to the defendant for the said house and lot; that the defendant has refused to account for the rent or value of the said house and lot to complainant, although he claims title to the same.

The amended bill prays, that the defendant may be compelled to come to a full account with the complainant in reference to all the matters and things charged, and that he may be decreed to pay over to complainant the money collected by him as attorney for the bank, and to pay the amount of the purchase money for said house and lot, with interest thereon, or that the Sheriff may be decreed to make titles to complainant, and that the defendant relinquish all claims to the house and lot, and pay to complainant all the rent which has been derived therefrom, and which, by prudent management, could have been derived therefrom.

To which bill a general demurrer was filed, alleging that taking the case made by the bill to be true, it is not such a case as doth entitle complainant to the discovery and relief as is thereby prayed.

The bill and demurrer were heard before Judge *Floyd*, and after argument had thereon, the same was overruled, and the defendant ordered to answer; to which counsel for plaintiffs in error excepted.

POWERS and WHITTLE, for plaintiffs in error.

POE and NISBET, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The jurisdiction of a Court of Equity is to be exercised, (1) where the principles of law by which the Ordinary Courts are guided give a right, but the powers of those Courts are not sufficient to afford a complete remedy, or their modes of proceeding

are inadequate to the purpose; (2) where the Courts of Ordinary jurisdiction are made instruments of injustice; (3) where the principles of law by which the Ordinary Courts are guided give no right, but upon the principles of universal justice the interference of the judicial power is necessary to prevent a wrong, and the positive law is silent; (4) to remove impediments to the fair decision of a question in other Courts; (5) to provide for the safety of property in dispute pending the litigation, and to preserve property in danger of being dissipated or destroyed by those to whose care by law it is entrusted, or by persons having immediate but partial interests; (6) to restrain the assertion of doubtful rights in a manner productive of irreparable mischief; (7) to prevent injury to a third person, by the doubtful titles of others; (8) to put a bound to vexatious and oppressive litigation, and to prevent multiplicity of suits; (9) to compel a discovery or obtain evidence which may assist the decision of other Courts; and (10) to preserve testimony, when in danger of being lost, before the matter to which it relates can be made the subject of judicial investigation. *Mitf. Eq. Pl. Jeremy,* 111, 112.

[1.] We will not pretend at present to go into any exposition of all, or indeed of any of these heads of Chancery jurisdiction; suffice it to say, that in the opinion of this Court, this bill which is demurred to for want of Equity, cannot be sustained under any of them. It will not be denied, that in matters of account, Courts of Equity in England exercise concurrent jurisdiction with Courts of Common Law. But conceding this, the only true principle even there, upon which they entertain suits for an account on matters cognizable at Law is, that either a Court of Law cannot give any remedy at all, or not so complete a remedy as Courts of Equity. If the account can be fairly taken in a Court of Common Law, and suitable relief administered, there is no pretext for the change or transfer of jurisdictions.

[2.] And *a fortiori,* is this doctrine true in this State, where Equity jurisprudence is confided to the ordinary Courts of Law, with a limited statutable jurisdiction, i. e. *"where a Common Law remedy is not adequate."*

Here, no discovery is sought or required, and there is not a single allegation in the bill going to show that the peculiar remedial process or functions of a Court of Equity are necessary. Had the complainant prayed to be substituted in the place of

Powers as the purchaser of the house and lot in Macon, that, perhaps, might have afforded a pretext for the interposition of a Court of Equity; but he is content by asking that Powers may be compelled to pay up the price at which the property was bid off under complainant's execution at Sheriff's sale, thus evincing his election or willingness to waive any right which he might be supposed to have, to consider this purchase as inuring to his benefit on account of the fiduciary relation subsisting between them.

Under these circumstances, we hold that Equity is not only ousted of its jurisdiction, but that it is altogether more proper that this settlement should be made in the Court where the business was transacted; and which is not only entirely competent to compel its officers to do justice to suitors, but which, on the other hand, should see to it that their officers have full justice done to them in the matter of fees. It would require a strong case to justify the Courts to send away these officers deprived of their just lien on the papers in their hands, for the professional services which they have rendered, to have their claims adjusted by a Jury in another forum.

Mr. Cooper says, " If the plaintiff can have as effectual and complete remedy in a Court of Law as in a Court of Equity, and that remedy is clear and certain, a demurrer, which is in truth a demurrer to the jurisdiction of the Court, will hold." *Eq. Pl. p.* 124.

Sir Chaloner Ogle brought his bill against the representatives of Admiral Haddock for an account and share of prize money, which was dismissed by the Lord Chancellor, on the ground that it was a mere legal right which should be recovered at Law. 1 *Ves. Sen.* 162.

*Parry vs. Owen,* (3 *Atkyn's R.* 740,) was a bill brought by the executrix of an attorney, for money due from the defendant for business done by her husband, as his attorney, and to be paid what should be found due on an account. The defendant demurred to the relief, and for cause of demurrer showed the remedy was at Law, and that an Act of Parliament pointed out a summary way. Lord Chancellor allowed the demurrer.

Now, the case before us is precisely the reverse of this. Here it is the client who prays an account against his attorney. The principle applies equally to both parties. Either is entitled to go into Equity against the other, whenever there is a proper case

made.   Neither, without such a case is made.   And it is worthy of observation, that Lord Chancellor *Hardwicke* assigned, as the reason for dismissing the bill, that the Statute of 2 *Geo. II.* had prescribed a summary remedy.   The same reason applies with double force here, where the client may not only sue at Law, but force his attorney to a speedy account *by rule,* when upon default he is subject to be stricken from the bar as a practitioner.   More than this, like all other agents, an attorney is liable, under the Penal Code of Georgia, to be punished by imprisonment and labor in the Penitentiary, if he converts his client's money, against his consent, to his own use, and fail or refuse to pay over the same when demanded.   It would seem, therefore, that these cumulative and most stringent remedies, civil and criminal, would suffice to settle an ordinary matter of account between client and attorney.

Believing as we do, then, that no sufficient ground is shown in the bill for the interference of a Court of Equity, we think the defendant's demurrer to the bill for want of equity to sustain the jurisdiction, ought to have been allowed, and adjudge accordingly.